Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Jamie Steel*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jamie Steel,<br><br>          Plaintiff,<br><br>     v.<br><br>Lincoln National Life Insurance Company, Canada Life Assurance Company, Foxworth-Galbraith Limber Company, Foxworth-Galbraith Lumber Company & Associated Companies Group Long Term Disability Plan,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT** |

    Now comes the Plaintiff, Jamie Steel (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

    1.    Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover

-1-

employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Foxworth-Galbraith Lumber Company (hereinafter referred to as the "Company") sponsored, administered and purchased a group disability insurance policy which was fully insured by Canada Life Assurance Company (hereinafter referred to as "Canada Life").  The specific Canada Life group policy is known as CL 000008245400000-1.  The group policy was administered by Jefferson Pilot Financial Insurance Company (hereinafter referred to as "Jefferson").  The Company's purpose in sponsoring, administering and purchasing the Canada Life policy was to provide disability insurance for its employees.  Upon information and belief, the Canada Life policy may have been included in and part of an employee benefit plan, specifically named the Foxworth-Galbraith Lumber Company & Associated Companies Group Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Lincoln National Life Insurance Company (hereinafter referred to as "Lincoln") merged with Jefferson on or around April 3, 2006.  During the processing of Plaintiff's claim and appeals, Lincoln sometimes corresponded with Plaintiff through letterhead in the name of Jefferson.  Plaintiff will refer to all correspondence herein as coming from Lincoln, including all correspondence on Jefferson letterhead.

5. Upon information and belief, Lincoln functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Lincoln.

6. Upon information and belief, Plaintiff believes Defendants operated under a conflict of interest in evaluating her claim due to the fact they may have operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Defendants' conflict existed in that if Plaintiff was disabled one of them was liable for payment of those benefits.

7. The Company, Canada Life, Lincoln and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

*Venue*

8. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

9. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits from any Defendant that she may be entitled to as a result of being found disabled.

10. On or about August 2, 2003, Plaintiff became disabled due to serious medical conditions and was unable to work in her designated occupation as a cashier. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation due to her serious medical conditions.

1      11.     Lincoln determined that Plaintiff unable to perform her regular occupation and approved her claim for long term disability benefits as of December 2, 2003.

       12.     Upon information and belief, the relevant Canada Life policy and definition of disability governing Plaintiff's long term disability claim is as follows:

> Totally Disabled and Total Disability mean during the Elimination Period and the next 24 months because of an Injury or Sickness You meet all of the following:
>
> (a) You are unable to do the Material and Substantial Duties of Your Own Occupation; and
>
> (b) You are receiving Appropriate Evaluation and Treatment from a Physician for that Injury or Sickness; and
>
> (c) Your Work Earnings are less than 20% of Your Indexed Pre-Disability Monthly Earnings.
>
> The definition changes 24 months after the end of the Elimination Period. From that point on, Totally Disabled and Total Disability mean because of an Injury or Sickness, all of the following are true:
>
> (a) You are unable to do the Material and Substantial Duties of any occupation for which You are or may become reasonably qualified by education, training, or experience; and
>
> (b) You are receiving Appropriate Evaluation and Treatment from a Physician for that Injury or Sickness; and
>
> (c) Your Work Earnings are less than 20% of Your Indexed Pre-Disability Monthly Earnings.

       13.     During a March 12, 2004 "DNS Review," Lincoln acknowledged Plaintiff's serious medical condition "is extremely difficult to treat" and "would preclude most people from many kinds of work." Lincoln further noted it doubted Plaintiff's condition had made "any improvement."

14. By letter dated July 14, 2008, Lincoln notified Plaintiff it had reviewed her claim for long term disability benefits and found she was entitled to such benefits "for a limited time period," approving Plaintiff's claim through May 19, 2005.

15. On September 11, 2008, pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the August 26, 2004 denial of her claim beyond May 19, 2005. On appeal, Plaintiff submitted additional medical evidence to Lincoln.

16. By letter dated January 13, 2009, Lincoln notified Plaintiff it was upholding its decision to deny her additional long term disability benefits beyond May 19, 2005, after erroneously concluding that Plaintiff's medical records did not support her continued disability from her "heavy physical capacity occupation." During the review of Plaintiff's long term disability claim, Lincoln referred Plaintiff's claim to an alleged unidentified "independent physician." Plaintiff questions the credentials, independence, impartiality and bias of Lincoln's alleged independent physician given its prior reliance on Dr. Nudelman, as discussed hereinabove, as well as its reliance on Dr. Marion discussed *infra*.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the January 13, 2009 denial of her claim on March 2, 2009. On appeal, Plaintiff submitted additional medical evidence to Lincoln in support of her appeal.

18. In support of her appeal Plaintiff submitted to Lincoln a Rehabilitation Survey stating that she had difficulty with many activities needed to maintain a full time working position. Plaintiff also submitted a Functional Capacity Evaluation dated November 13, 2008 performed by a qualified evaluator, which concluded Plaintiff was unable "to perform tasks even at the sedentary work level, due to her restrictions and limitations, even on a part time basis."

19. Plaintiff also submitted to Lincoln a Pain Functional Capacity Questionnaire and a Fatigue Residual Functional Capacity Questionnaire from a treating physician dated

May 20, 2006, which stated Plaintiff "suffers from pain at a severe level due to her medical conditions" and concluded that Plaintiff "is unable to sustain work on a regular and continuing basis." Plaintiff further submitted an affidavit from her husband stating that Plaintiff "is currently unable to work in any occupation and had been for at least the last several years."

20. Plaintiff also submitted a Vocational Report from a qualified vocational rehabilitation and labor market consultant dated April 17, 2009 which concluded Plaintiff's "condition has not improved. [Plaintiff] has remained unable to work in any capacity since the initial onset of her illness…" The Report further opined that Plaintiff "meets the definition of disabled as set forth in the Lincoln National Life Insurance Company Long Term Disability Insurance Plan."

21. Plaintiff applied for social security benefits through the Social Security Administration (SSA). In a decision dated October 17, 2006, SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of August 2, 2003. SSA's definition of disability is more stringent than the definition of disability for the first twenty-four months of disability (i.e. "own occupation" coverage) pursuant to the relevant Canada Life policy and is similar to the definition of disability which applies after the first twenty-four months of disability (i.e. "any occupation" coverage) in the relevant policy. SSA's approval and continued payment of disability benefits through the date of this Complaint is relevant evidence for this Court to consider with regard to Defendants' conflicts of interest that she believes is a reason her claim was denied.

22. As part of its evaluation of Plaintiff's claim, Lincoln referred Plaintiff's claim to a third party vendor known as Reliable Review Services ("RRS") in order to obtain a medical review by a physician retained by RRS.

23. Upon information and belief, RRS is a company or part of a group of companies that on its website[1] declares it is in the business or providing claim review services to the disability insurance industry:

> RRS began with a vision: to provide employers, third party administrators and disability insurers with professional case review resources focused on the disability industry, delivered through a nationwide network of physician experts…Today, our clients cross multiple verticals, including many of the major disability insurers.

24. Upon information and belief, due to RRS' extensive business relationship with the disability insurance industry and possibly Lincoln, Plaintiff believes the involvement of RRS in the review of her claim presents a conflict of interest and is a reason her claim was denied and why Plaintiff did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

25. Due to the nature of RRS' relationship with the disability insurance industry and possibly Lincoln, Plaintiff questions the objectivity and impartiality of Lincoln, RRS and any individual retained by Lincoln and/or RRS to review her claim and provide a full and fair review. RRS and Lincoln's conflicts of interest are evident in the June 1, 2009 medical review report authored by RRS contractor Phillip Marion, M.D., M.D., M.P.H.  Dr. Marion was retained by RRS to perform an alleged independent review of Plaintiff's disability claim.  Dr. Marion did not examine Plaintiff and his opinion that Plaintiff was able to perform heavy work was based entirely on a selective review of Plaintiff's medical records and a selective review of her treating medical professionals' opinions that she was unable to engage in any gainful employment.

---

[1] *See* www.reliablers.com.

26. Based upon a cursory review of the Lexis legal data base,[2] upon information and belief, due to what may be his extensive relationship with the disability insurance industry, Dr. Marion may be a long time consultant for the disability insurance industry, including companies such as RRS and Lincoln. Plaintiff believes Dr. Marion's review of her claim presents a conflict of interest and was a reason her claim was denied and why Plaintiff did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1. Plaintiff questions the objectivity and impartiality of Lincoln and Dr. Marion in reviewing her claim.

27. In his June 1, 2009 report, Dr. Marion ignored the opinions of Plaintiff's treating physicians that Plaintiff is unable to work as well as Lincoln's previous conclusions that Plaintiff had a serious medical condition that was extremely difficult to treat and probably would not improve. Dr. Marion based his findings on an alleged absence of objective clinical documentation and he ignored or de-emphasized the findings of Plaintiff's treating physicians and completely failed to consider the combined effects of Plaintiff's medical conditions as well as the side effects her medications would produce in any work environment. Dr. Marion also erred in de-emphasizing Plaintiff's self-reported limitations.

28. Dr. Marion's review of Plaintiff's medical records was flawed because it was selective and sought to de-emphasize evidence she submitted which proved she was disabled in order to provide a reason for Lincoln to justify a denial of her claim.

29. Upon information and belief, Plaintiff believes Dr. Marion's biased opinions are the product of his relationship with RRS and the medical review industry in general wherein he may be repeatedly retained by RRS or other similar insurance industry related

---

[2] *See Ellis v. Hartford Life and Acc. Ins. Co.*, 594 F.Supp.2d 564 (E.D. Pa. 2009); and, *Curry v. American Intern. Group, Inc. Plan No. 502*, 579 F.Supp.2d 413 (S.D. N.Y. 2008).

entities to perform the type of services he provided in Plaintiff's claim.  Plaintiff believes Dr. Marion has a conflict of interest and may not be objective in that he may have an incentive to protect his own consulting relationships with the aforementioned industry by providing medical review reports which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Lincoln and which supported the denial of Plaintiff's claim. Plaintiff believes Dr. Marion's conflict of interest led to the biased review he provided to Lincoln and in turn, Lincoln's conflict of interest led it to rely on Dr. Marion's flawed opinions in denying her claim.

30. In a letter dated June 29, 2009, Lincoln notified Plaintiff it was upholding its decision to deny her claim for long term disability benefits after again finding no medical evidence supported Plaintiff's claim of disability that would preclude her from working in a heavy physical demand occupation.

31. In its June 29, 2009 denial letter, Lincoln denied Plaintiff of a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider or de-emphasizing all evidence submitted by Plaintiff, failing to consider or de-emphasizing all the limitations set forth in the medical evidence, failing to consider or de-emphasizing the side effects Plaintiff experienced from her numerous medications and failing to consider or de-emphasizing the opinions of her physicians that Plaintiff was unable to work in any occupation and is totally disabled. Lincoln's failure to consider the above information in determining Plaintiff's ability to perform her occupation denied her of a full and fair review and led to a flawed determination that she was not disabled.

32. Lincoln further denied Plaintiff a full and fair review pursuant to ERISA because it did not request an independent medical examination of Plaintiff or seek a review by an impartial vocational expert to assess the impact her physicians' limitations

would have in any work environment. The relevant policy allowed an independent medical examination and vocational evaluation with a professional of its own choosing. Lincoln's failure to obtain these evaluations violated its fiduciary duty to Plaintiff and also precluded a full and fair review due to its failure to properly investigate her claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h).

33. In evaluating Plaintiff's claim on appeal, Lincoln had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [3]

34. Plaintiff believes the reason Lincoln provided an unlawful review which was neither full or fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the aforementioned dual roles it undertook as decision maker and payor of benefits in her claim which created an inherent conflict of interest and this conflict is a reason her disability claim was denied.

35. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Lincoln and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Lincoln's decision to deny her claim.

36. Lincoln has informed Plaintiff she has exhausted her administrative remedies pursuant to relevant policy.

---

[3] "It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

37. Plaintiff seeks benefits pursuant to the "own" and "any" occupation definitions of disability set forth in the policy notwithstanding the fact this claim may not be ripe given the fact it is administratively futile for Plaintiff to seek a determination on these benefits because Lincoln has already denied her claim for disability benefits pursuant to the own occupation definition of disability in the relevant policy.

38. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo* because the Company or Plan may not have made a proper delegation or properly vested fiduciary authority or power for plan and/or claim administration in Lincoln pursuant to ERISA.

39. As a direct result of Lincoln's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

40. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

41. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits as a result of being found disabled pursuant to the relevant policy from the date she was first denied these benefits through the date of judgment and prejudgment interest on those benefits as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

1       B.      For an Order that Plaintiff meets the relevant policy's definitions of disability for "own" and "any" occupation benefits;

C.      For an Order directing Defendants to continue paying Plaintiff benefits until such time as she meets the Plan or policy conditions for termination of benefits;

D.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

E.      For such other and further relief as the Court deems just and proper.

DATED this 1st day of March, 2010.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff